IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDEL MONIEM ALI EL-GANAYNI, ) | |
| Plaintiff, ) | |
| v. ) | 2:08-cv-881 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| ENERGY and JEFFREY F. KUPFER, ) | |
| Acting Deputy Secretary of Department of ) | |
| Energy, ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

Pending before the Court is the remaining portion of the MOTION TO DISMISS (Document No. 20) filed by Defendants United States Department of Energy and Jeffrey F. Kupfer, Acting Deputy Secretary (collectively, "DOE"). In a Memorandum Order dated October 31, 2008, the Court granted Defendants' motion to dismiss Counts I and II of the Complaint, but deferred ruling on Count III pending supplemental briefs. The parties have now filed the requested supplemental briefs (Document Nos. 33, 34) and the motion is ripe for disposition. Also pending is the MOTION FOR RECONSIDERATION (Document No. 32) filed by Plaintiff. As noted in its earlier Memorandum Order, these motions must be resolved before the Court considers the pending motion for injunctive relief.

The Court will not reiterate the factual background of this case in full, as set forth in the Complaint and its earlier Memorandum Order. Briefly, Dr. El-Ganayni's security clearance was revoked and he attempted to challenge the revocation pursuant to DOE's regulations. During the administrative process, Acting Deputy Secretary of Energy Jeffrey Kupfer signed a certification (the "Kupfer Certification"), which purported to render the proceeding moot. The Kupfer

Certification made the following "certification and determinations":

> 1. In accordance with Section 5.2(d) of Executive Order 12968 (*Access to Classified Information*) (August 4, 1995), I certify that the procedures set forth in Section 5.2(a) of the Executive Order and in the Department of Energy's regulations at 10 C.F.R. § 710.26-710.30 cannot be made available to Mr. El-Ganayni without damaging the interests of national security by revealing classified information. This certification is conclusive.
>
> 2. In accordance with Section 5.2(e) of Executive Order 12968, I have determined that the procedures prescribed by subsection (a) of Section 5.2 of the Executive Order cannot be invoked in a manner that is consistent with national security.
>
> 3. Pursuant to the authority granted to the Secretary of Energy by section 145 of the Atomic Energy Act of 1954, as amended (42 U.S.C. § 2165), I hereby terminate Mr. El-Ganayni's access to classified information in the interests of national security.
>
> 4. The determinations in paragraphs 2 and 3 hereof are conclusive.

This litigation followed. Plaintiff asks this Court to enjoin "defendants from using the national-security certification to shield their clearance-revocation decision from scrutiny." Count III alleges a Due Process violation of agency regulations under the Administrative Procedure Act and the Fifth Amendment. Plaintiff seeks as relief a declaration that Defendants' actions violated his constitutional rights and an order requiring DOE to provide him with notice and hearing procedures consistent with the Constitution and DOE regulations to review the security-clearance revocation determination.

**Plaintiff's Motion for Reconsideration**

Plaintiff asks the Court to reconsider its decision to dismiss Counts I and II of the Complaint. Plaintiff argues that the concerns expressed in the Court's earlier Memorandum

Order can be addressed by requiring Defendants to conduct a review pursuant to the applicable DOE regulations, and that such a procedure is consistent with *Webster v. Doe*, 486 U.S. 592 (1988) and *Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir. 1996).

These arguments do not meet the high standard required to justify reconsideration. Generally speaking, a motion for reconsideration will only be granted if: (1) there has been an intervening change in controlling law; (2) new evidence, which was not previously available, has become available; or (3) necessary to correct a clear error of law or to prevent manifest injustice. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 47 U.S. 1171 (1986). Plaintiff has pointed to no intervening change in controlling law, new evidence, a clear error of law, or manifest injustice. Rather, Plaintiff simply disagrees with the manner in which this Court has attempted to reconcile and apply *Webster* and *Stehney* and *Department of Navy v. Egan*, 484 U.S. 518 (1988). Motions for reconsideration are not designed to provide litigants with a second bite at the apple. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

Moreover, an order requiring Defendants to conduct the review themselves would implicate the same separation of powers principles that caused the Court to grant the motion to dismiss Counts I and II. As the Court explained in its earlier Memorandum Order:

> Kupfer certified that following the regulatory procedures would not be consistent with national security. Plaintiff would have this Court override this certification and order that such procedures be made available. There are no clear principles by which the Court may decide which party is correct. In *Egan*, the Supreme Court explained that an outside nonexpert body cannot reasonably review the substance of the agency's predictive judgment or determine what constitutes an acceptable level of risk. Again, *Egan* dictates that the court yield to the decision of the Executive.

Accordingly, the MOTION FOR RECONSIDERATION (Document No. 32) filed by Plaintiff is **DENIED**.

3

**Legal Analysis of Count III**

Defendants concede that this Court has jurisdiction to review Plaintiff's claim that DOE failed to follow its own procedures, but they contend that Count III fails to state a valid claim. The Court addressed some of the parties' contentions in its earlier Memorandum Order but reserved ruling on the motion to dismiss Count III pending supplemental briefing on the following questions: (1) the standard of review of the agency's interpretation of the Executive Orders; and (2) the relationship and application of Executive Orders 12968 and 10865.

Both Executive Orders 12968 and 10865 deal with security clearances held by employees of private-sector government contractors, such as Dr. El-Ganayni.[1] Both Executive Orders recognize that a balance must be struck between fairness to individual employees and the protection of classified information that could irreparably damage national security.[2] Executive Order 10865 states that its provisions "provide maximum possible safeguards" to protect individual interests. Both Executive Orders remain in full force and effect.

In its earlier Memorandum Order, the Court raised *sua sponte* an apparent conflict between Executive Orders 12968 and 10865 as to who has the authority to certify that the hearing procedures set forth in the implementing regulations cannot be made available. Section 5.2(d) of Executive Order 12968 states (emphasis added):

---

[1] Executive Order 12968 § 1.1(e) defines the term "employee" to include a person employed by an industrial or commercial contractor. Executive Order 10865 is entitled "Safeguarding Classified Information Within Industry."

[2] The preamble to Executive Order 12968 recognizes the need to protect classified information "while protecting fair and equitable treatment to those Americans upon whom we rely to guard our national security." The preamble to Executive Order 10865 recognizes that "it is a fundamental principle of our Government to protect the interest of individuals against unreasonable or unwarranted encroachment."

> When the **head of an agency or principal deputy** personally certifies that **a** procedure set forth in this section cannot be made available in a particular case without damaging the national security interests of the United States by revealing classified information, the particular procedure shall not be made available. This certification shall be conclusive.

Section 5.2(e) states (emphasis added):

> This section shall not be deemed to limit or affect the responsibility and power of an **agency head** pursuant to any law or other Executive order to deny or terminate access to classified information in the interests of national security. The power and responsibility to deny or terminate access to classified information pursuant to any law or other Executive order may be exercised **only** where the **agency head** determines that the **procedures prescribed in subsection (a)** of this section cannot be invoked in a manner that is consistent with national security. This determination shall be conclusive.

Section 7.2(c) states, in relevant part (emphasis added):

> No prior Executive orders are repealed by this order. To the extent that this order is inconsistent with any provision of any prior Executive order, this order shall control, **except** that this order **shall not diminish or otherwise affect** the requirements of Executive Order No. 10450, [or] **the denial and revocation procedures provided to individuals covered by Executive Order No. 10865**, as amended....

Executive Order 10865 § 8 states that "[e]xcept as otherwise specified," authority vested in the agency head may be delegated to the principal deputy. Section 9, however, states (emphasis added):

> Nothing contained in this order shall be deemed to limit or affect the responsibility and powers of the **head of a department to deny or revoke access** to a specific classification category if the security of the nation so requires. **Such authority may not be delegated** and may be exercised **only** when the **head of a department** determines that the procedures prescribed in sections 3, 4, and 5 cannot be invoked consistently with the national security and such determination shall be conclusive.

In sum, as Defendants concede, the Executive Orders "differ" as to who has the authority to determine that review procedures cannot be made available and whether that authority is

5

delegable. Defendants' Supplemental Brief at 8. Executive Order 10865 "specifically prohibits the head of the department from delegating that authority" while Executive Order 12968 "contains no such limitation." Defendants' Supplemental Brief at 9.

Defendants make three arguments as to why the Kupfer Certification was, nevertheless, effective: (1) that Plaintiff has no private right of action to enforce the Executive Orders; (2) that Executive Order 12968 §§ 5.2(d) and (e) do not "diminish or otherwise affect" the procedures provided to individuals under Executive Order 10865; and (3) generally, that even if another interpretation were plausible, Defendants' interpretation is entitled to substantial deference. None of these arguments is convincing.

1. Private Right of Action

Defendants contend that Plaintiff does not have a right to challenge the agency's interpretation of the Executive Order. The Court acknowledges that Executive Order 12968 § 7.2(e) states that the Executive Order is intended only for internal management of the executive branch and "does not create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States. . . ." However, Defendants concede that: "Courts have recognized that in certain instances an action to enforce an Executive order may be brought under the Administrative Procedure Act." Defendants' Supplemental Brief at 4. The Court of Appeals for the Third Circuit made clear in *Stehney* that this is one of these "certain instances."

As the Court explained in its earlier Memorandum Order at 16:

> However, it is clear that an affected private employee has standing to

6

> challenge the security clearance revocation decision and that courts may adjudicate a claim that the government has failed to follow its own procedures. *Stehney*, 101 F.3d at 930-31; *Accord Hill*, 844 F.2d at 1411 (rejecting constitutional claims based on property and liberty interests but stating: "Constitutional questions aside, however, courts do have the power to compel agencies to follow their own regulations.") This action is properly framed as a suit under the Administrative Procedure Act. *Stehney*, 101 F.3d at 934. The remedy, if Plaintiff is successful, is a remand to the agency with instructions to comply with the appropriate and applicable procedures. *Hill*, 844 F.2d at 1412.

In *Stehney*, 101 F.3d at 933, the district court held that the statute committed security clearance decisions to the discretion of the agency and found that the government had not consented to be sued. The Court of Appeals for the Third Circuit rejected the government's assertion that its actions were non-reviewable and reversed. The Court of Appeals cited *Service v. Dulles*, 354 U.S. 363, 371-73 (1957), for the proposition that even "though statute granted agency 'absolute discretion' regarding employee discharge decisions, [an] agency must still comply with its own regulations, and [the] court has jurisdiction to consider claims that it did not do so." *Id.* (additional citations omitted). Thus, Defendants' argument is squarely contrary to mandatory authority that is directly on-point.[3]

Moreover, the case primarily relied upon by Defendants, *Facchiano Constr. Co. v. United States*, 987 F.2d 206 (3d Cir. 1993) (involving debarment of a government contractor due to payroll fraud), is factually and legally distinguishable in at least three respects. In *Facchiano*, the underlying debarments by the Department of Housing and Urban Development (HUD) and Department of Labor (DOL) did not rely upon authority conveyed directly by the Executive Order at issue. Rather, the plaintiff-contractor sought to introduce the Executive Order after the

---

[3]Defendants did not even attempt to distinguish *Stehney* in their Supplemental Brief.

fact to void the result of the DOL debarment hearing.[4] The *Facchiano* Court noted: "Generally, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Id.* at 210. However, the Court went on to find that: "Plaintiff have not shown that the [executive] order was designed for their benefit." *Id.* The Court of Appeals also observed: "It is clear from the language of the executive order that it was not intended to be self-executing, but would be dependent upon the issuance of guidelines by the Office of Management and Budget (OMB) and subsequent implementing regulations by the agencies." *Id.*

In this case, the Kupfer Certification purported to rely directly on the Executive Order, rather than the implementing regulations, for its authority. This Court concluded in its earlier Memorandum Order that such reliance upon the Executive Order was permissible because the Executive Order was self-actuating. In addition, Executive Orders 12968 and 10865 were designed at least in part for Plaintiff's benefit, in that they provide safeguards for individuals holding security clearances. *See Stehney*, 101 F.3d at 931 ("as the target of the [] regulatory action, Stehney's interests fall within the zone of interests protected by the constitutional and regulatory provisions on which her case is based.") Thus, *Facchiano* is not controlling.

In sum, Defendants cannot simultaneously rely directly on the authority of the Executive Order while shielding their actions from judicial review. As set forth in *Stehney*, courts have the power to compel Defendants to follow their own rules in revoking Plaintiff's security clearance.

---

[4]Executive Order 12549 had been issued approximately three weeks prior to the DOL debarment proceeding, and provided, in relevant part: "Debarment or suspension of a participant in a program by one agency shall have government-wide effect." The plaintiff-contractor argued that DOL was required to abide by the less-onerous result of the HUD debarment.

2. Does Defendants' Interpretation of Executive Order 12968 "Diminish or Otherwise Affect" the Denial and Revocation Procedures Provided to Individuals in Executive Order 10865?

Defendants concede that Executive Orders 12968 and 10865 are in conflict. Executive Order 12968 § 5.2(d) empowers the "head of an agency **or principal deputy**" to determine that the review procedures cannot be invoked in a manner that is consistent with national security, while Executive Order 10865 § 9 states that the authority of the "head of a department" to determine that the procedures cannot be invoked in a manner that is consistent with national security "**may not be delegated**." Defendants' Supplemental Brief at 8-9. Further, Defendants recognize that in Executive Order 12968 § 7.2(c), President Clinton provided that the denial and revocation procedures provided to individuals in Executive Order 10865 shall not be "diminish[ed] or otherwise affect[ed]."

Defendants argue, though, that "Sections 5.2(d) and (e) do not fall within the exception noted because they do not diminish or change the denial and revocation procedures provided to individuals by Sections 3-5 of Executive Order 10865." Defendants' Supplemental Brief at 11. In essence, as the Court understands the argument, Defendants contend that Sections 5.2(d) and (e) deal with "authority" and "delegation" and therefore do not diminish or affect the specific underlying procedures.

The Court is not convinced by Defendants' argument. As a starting point, Executive Order 10865 provided for the "maximum possible safeguards" to protect individual security-holder interests. Further, Executive Order 12968 § 7.2(c) uses the terms "diminish" and "otherwise affect." These are expansive terms, which connote that even minimal infringements on the safeguards set forth in Executive Order 10865 are not intended. Defendants' effort to

9

construe § 7.2(c) narrowly, as barring only direct restrictions on sections 3-5 of Executive Order 10865, is not supported in its very text.[5] The Court construes § 7.2(c) to provide that Executive Order 12968 must yield to Executive Order 10865 in the event of such inconsistencies.

Defendants' argued earlier in this case that Plaintiff had received due process in part because the procedures required a high-ranking official to personally review the revocation decision. It is inconsistent for Defendants to now argue that such a personal review by a high-ranking official is not a "denial and revocation procedure." In any event, such an interpretation would be groundless – the explicit requirement in Executive Order 10865 for a personal, non-delegable review by the Secretary of Energy is certainly a "denial and revocation procedure." It is a "procedure,"[6] and it occurs during the denial and revocation of a security clearance.

It cannot seriously be contested (and indeed, Defendants have not contested) that the procedure set forth in Executive Order 10865 has been "diminished" and "otherwise affected." Where pursuant to Executive Order 10865, only the Secretary of Energy could make a personal, non-delegable decision, Defendants now seek to rely on an action taken by a subordinate, pursuant to a delegation.

In summary, the Kupfer Certification violates § 7.2(c) of Executive Order 12968 by "diminishing or otherwise affecting" the denial and revocation procedures provided to individuals covered by Executive Order 10865. Under the circumstances of this matter as presented to the Court, only the Secretary of Energy (agency head) is empowered to determine that the denial and revocation procedures for Dr. El-Ganayni "cannot be invoked in a manner that

---

[5]Defendants have not cited a single authority in support of their proposed construction.

[6]Black's Law Dictionary (7th ed. 1999) defines the term "procedure" as a "specific method or course of action."

10

is consistent with national security.

3. Standard of Review of Agency Interpretation

Plaintiff contends that DOE's interpretation of the Executive Orders is not entitled to any deference because its interpretation raises serious constitutional concerns by trying to insulate its actions from review, has not been consistently held, and is contrary to the interpretation expressed in the implementing regulations. Defendants argue that their interpretation is entitled to substantial deference, citing *Contractors Ass'n of E. Pa. v. Sec'y of Labor*, 442 F.2d 159, 175 (3d Cir.1971). The Court need not determine the appropriate standard of review of the agency's interpretation of the Executive Order and regulations. For the reasons explained above, Defendants' interpretation is not consistent with the actual text of the Executive Orders. *See Udall v. Tallman*, 380 U.S. 1, 17 (1965) (agency interpretation must be upheld unless it is plainly erroneous or inconsistent with the Executive Order). Therefore, even assuming arguendo that substantial deference must be given, the interpretation of DOE cannot be credited.

In accordance with the foregoing, the MOTION TO DISMISS (Document No. 20) filed by Defendants is **DENIED as to Count III** of the Complaint.

The Court hereby schedules a status conference with counsel for the parties to discuss the pending motions, future direction of this litigation and the scheduling of a preliminary injunction hearing, if necessary. Said conference shall be conducted by telephone on Tuesday, November 25, 2008 at 9:30 a.m., provided that counsel are available on this short notice. Counsel for

Plaintiff shall call counsel for Defendants and thereafter call the Court at (412)208-7495.

SO ORDERED this 20th day of November, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge


cc: Keith E. Whitson, Esquire
Email: kwhitson@schnader.com
Paul H. Titus, Esquire
Email: ptitus@schnader.com
George E. McGrann, Esquire
Email: gmcgrann@schnader.com
Witold J. Walczak, Esquire
Email: vwalczak@aclupgh.org

Marcia K. Sowles, Esquire
Email: Marcia.Sowles@usdoj.gov